N. J. BICKETT and wife ELIZABETH v. JOSEPH NASH et. al.

*Estoppel—Res Judicata—Former Judgment.*

1. Where, in a former action, in which plaintiff claimed title to the disputed land, under a devise, the only issue was whether the devise embraced the tract in controversy, and there was judgment for the plaintiff : *Held*, that this was as conclusive upon the defendant and those claiming under him as if the title under which plaintiff claimed had been put directly in issue ; and that in a subsequent action between same parties involving the title, the defendant was estopped to show anything in opposition thereto except that since the former judgment the title had become divested from plaintiff.

This is a CIVIL ACTION, which was tried befqre *Boykin, J.*, at February Term, 1888, of UNION Superior Court.

This action, commenced in January, 1886, is prosecuted to recover compensation for trespasses alleged to have been committed by the defendant upon land particularly defined and described in the complaint, belonging to the *feme* plaintiff, and to prevent their threatened repetition by a perpetual injunction. The plaintiffs state that at a special term of the Superior Court of Union, held in August, 1884, in an action there pending, in which they were plaintiffs and the present defendant and others were defendants, and there tried, it was adjudged that the plaintiffs were the owners and entitled to recover possession of the same land as that on which the trespasses were committed and the title to which the defendant now claims under a grant from the State issued to him on December 10th, 1885, for a larger tract of which that now controverted forms a part.

Upon the trial the plaintiffs introduced the record of the former suit, and after proving the trespasses, it being admitted that they were upon the same land that was recovered in the former action, rested. The defendant undertook to

show title in himself, and for this purpose offered the grant in evidence.

The plaintiff objected, on the ground that the adjudication in the previous suit operated as an estoppel, and was conclusive between the parties as to the title. The Court sustained the objection, and the defendant excepted.

The complaint in the former suit sets out in full the will of Richard Nash, the first and fifth clauses of which, embracing the land in dispute, are as follows:

" 1. I give my wife Julian the house and land whereon she now lives; also the crop that is on hand, two cows and calves, two sows and pigs, and ten head of the first choice head of hogs, twelve head of sheep, one beef cow, and all of the geese, all household furniture, the thresher and fan to remain where it is.

" 5. I give unto my son James Nash the land whereon I now live at my wife's death; also for James to live on said land, one horse and fifty dollars in money, one cow and calf and ten dollars in money."

The complaint further alleges, in article 3, that at the time of the death of the said Richard Nash he was seized and possessed in fee simple absolute of the tract of land more particularly described in the eighth article, and in article 4, that the tract is embraced in the devises made in the articles recited.

It alleges that the two devisees survived the testator, and afterwards the said James Nash died intestate, leaving him surviving, his widow, the plaintiff Elizabeth E., since intermarried with Nimrod J. Bickett, and an infant child of her first marriage; and thereafter said infant Sarah died, leaving no brother or sister, and thence her estate descended to her mother under the law of descent—*The Code*, § 1281, Rule 6— and that the widow of the testator died in the year 1881. Thus the plaintiffs derive their title—or rather that of Elizabeth E.—to the land.

In the answer it was admitted, in article 1, that the allegations made in articles 1, 2, 3 and 5, are true, and then it denies that the tract in dispute "is included in the land mentioned in items 1 and 5 of the will." It, for want of information, denies that James Nash is dead ; or if he is, that his death preceded that of his infant daughter, and that the intestaté ever owned the land, or had any interest therein other than as a tenant in common with the heirs-at-law of the testator, and proceeds to controvert other averments in the complaint.

There is a separate and additional answer put in by the defendants, to which we advert only to say that the defence, or counter-claim set up as a defence, seems not to have been considered in the further conduct of the cause.

The record, without setting out the issues raised by the pleadings—if, indeed, any were drawn in form and submitted to the jury—states in general terms that all the issues, that is, matters in controversy, were found by the jury in favor of the plaintiffs, and upon the verdict judgment was entered up in the following terms:

" This cause coming on to be heard before his Honor Jas. C. MacRae, Judge, and a jury, and being heard, and issues having been found in favor of the plaintiff, and that the *feme* plaintiff is entitled to the possession of the land in controversy, it is adjudged that the plaintiffs are entitled to the immediate possession of the following described land (giving the same boundaries as in the plaintiffs' complaint in the present action), and that the plaintiffs do recover of the defendants the costs incurred for the attendance of their witnesses. It is further adjudged that a writ of possession issue," &c.

From the judgment rendered in the present action, adjudging that plaintiffs are entitled to possession and perpetually restraining the defendant, the latter appealed.

*Mr. H. B. Adams,* for the plaintiffs.

*Messrs. J. B. Batchelor* and *John Devereux, Jr.,* for the defendant.

SMITH, C. J. (after stating the case.) The only matter averred in the complaint and controverted in the answer in the former action was the truth of the averments of fact by which the title of the devisee of the remainder, derived under item 5 aforesaid, is traced to the *feme* plaintiff, and whether that devise, in using the words " the land whereon I now live," construed in connection with those contained in item 1, " the house and land whereon she now lives," comprehends that claimed in the suit. Both of these questions were conclusively settled by the verdict, and taken in connection with the admissions in the answer, followed by the judgment upon them, as conclusively and finally determines the title to be in the *feme* plaintiff. Not alone does the result show that the defendants have not, but it shows that the *feme* plaintiff has, an estate in fee and absolute in the premises, and the record cannot be contradicted by them. There could be no direct issue as to the title derived under the will, since this is admitted, and the only controverted fact is, not as to the testator's ownership of the land, but whether the devises comprehend it, and thus the same consequences follow as would from a direct finding upon an issue as to title.

The record shows a direct adjudication, and its results cannot be avoided by taking out a subsequent grant. If the adjudication establishes the incontrovertible fact between the parties that the *feme* plaintiff owned the land, the defendant can only defend himself by showing that the estate was in some legal method divested out of her afterwards, and this he has not done. The State could not grant the land unless the title was in the State, and as the defendant is estopped to deny that it was in her when the adjudi-

cation was made, he must show that it has been since divested to resist the recovery, and this he has not attempted to do.

The cases cited for the defence are not in point, and the rulings in them proceed upon the ground of a subsequent divesting, as in *Johnson* v. *Farlow*, 13 Ired., 84, or upon the recognized rule of practice that where both parties claim the same land from the same common source neither can dispute the title of the other and show it to be in another, unless he can connect himself with it. *Fisher* v. *Mining Co.*, 94 N. C., 397, and numerous recent cases therein cited.

The present case involves none of these conditions. There is no claim of an after acquired title superior to the plaintiffs', for that of the State had been divested previously and not again acquired, and if it had been, it was not subject to an entry and regranting under the law. *State* v. *Bevers*, 86 N. C., 588. Nor do the parties claim from a common source. On the contrary, as an examination of the record shows, the controversy was not about the testator's title, but about his disposition of the property under his will.

Clearly the record constitutes an estoppel, as understood and defined in many adjudications in this Court. *Armfield* v. *Moore*, Busb., 157; *Fanshaw* v. *Fanshaw*, Ibid., 166; *Rogers* v. *Ratcliff*, 3 Jones, 225; *Isler* v. *Harrison*, 71 N. C., 64; *Falls* v. *Gamble*, 66 N. C., 455; *Yates* v. *Yates*, 81 N. C., 397; *Tuttle* v. *Harrill*, 85 N. C., 456.

The effect of a judgment where the title to land comes into controversy and is decided is equally an estoppel as if personal property was the subject matter involved in the suit. *Davis* v. *Higgins*, 87 N. C., 298; *Johnson* v. *Pate*, 90 N. C., 334

There is no error, and the judgment is affirmed.

Affirmed.